UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| Alex Eli Alvarez, | Case No.: 24-41674-jmm |
| Debtor. | |

---------------------------------------------------------X

| | |
|---|---|
| Alex Eli Alvarez, | |
| Plaintiff, | Adv. Proc. No.: 24-01074-jmm |
| v. | |
| United States Department of Education,<br>The Student Loan Corporation, and<br>Southwood Financial Trust I, | |
| Defendants. | |

---------------------------------------------------------X

**MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT TO SOUTHWOOD FINANCIAL LLC AS TRUST MANAGER FOR SOUTHWOOD FINANCIAL TRUST I AND THE UNITED STATES DEPARTMENT OF EDUCATION**

Appearances:

Natalie Jean Baptiste
The Legal Aid Society
153-01 Jamaica Avenue
Suite 202
Jamaica, NY 11432
*Counsel for Alex Eli Alvarez*

Alexandra Megaris
DOJ-USAO
271-A Cadman Plaza East
Brooklyn, NY 11201
*Counsel for the United States Department of Education*

Geoffrey J. Peters
Weltman, Weinberg & Reis, Co., L.P.A.
5475 Rings Road
Suite 200
Dublin, OH 43017
*Counsel for Southwood Financial LLC As Trust Manager for Southwood Financial Trust I*

JIL MAZER-MARINO
CHIEF UNITED STATES BANKRUPTCY JUDGE

**INTRODUCTION**

Debtor and Plaintiff, Alex Eli Alvarez, filed this adversary proceeding seeking discharge of her student loans from Southwood Financial LLC as Trust Manager for Southwood Financial Trust I ("Southwood"), the United States Department of Education (the "DOE"), and The Student Loan Corporation. Plaintiff asserts that Southwood's claims are dischargeable because they are not qualified educational loans. Plaintiff also asserts Southwood's claims and the DOE's claims are dischargeable under the *Brunner* test because repayment of those loans would constitute an undue hardship. Plaintiff also urges the Court to abandon the *Brunner* test and find that repayment of the claims would present an undue hardship on Plaintiff.

Southwood seeks summary judgment that its claims are nondischargeable because they are qualified educational loans and repayment of those student loans would not constitute an undue hardship on Plaintiff. The DOE also seeks summary judgment that its claims are not dischargeable because Plaintiff's repayment would not present an undue hardship on Plaintiff.

For the reasons discussed below, the Court concludes: (1) there are no disputes as to material facts and summary judgment is appropriate; (2) Southwood has satisfied its burden of proof that its claims are for qualified education loans; and (3) Plaintiff failed to meet her burden of proof and show that under the *Brunner* test, repaying the debts owed to Southwood and the DOE would be an undue burden on Plaintiff. Lastly, the Court is bound by Second Circuit precedent and cannot find Southwood's claims and the DOE's claims to be dischargeable due to undue hardship unless Plaintiff satisfies the *Brunner* test. Therefore, Southwood's and DOE's motions for summary judgment dismissing Plaintiff's claims are granted.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by the Order, dated December 5, 2012. The Court may hear and determine the claims asserted in this adversary proceeding because they are core proceedings under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding under Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

Plaintiff commenced this adversary proceeding on July 22, 2024 against the DOE, The Student Loan Corporation, and SLM Corporation, seeking a determination that her student loans are dischargeable. Compl. to Determine Discharg. of Student Loan Debt, Adv. Pro. ECF No. 1.[1] Plaintiff amended her Complaint to substitute defendant Southwood for SLM Corporation. Amended Complaint, Adv. Pro. ECF No. 10. Southwood and DOE answered the Amended Complaint. Answer of Def. Southwood Fin. Trust LLC as Trust Manager for Southwood Fin. Trust I to Pl.'s Am. Compl., Adv. Pro. ECF No. 12; Answer of Def. U.S. Dep't. of Edu. to Pl.'s Am. Compl., Adv. Pro. ECF No. 18.

Southwood and DOE each moved for summary judgment. Mot. for Summ. J. of Def. Southwood Fin. LLC as Trust Manager for Southwood Fin. Trust I, Adv. Pro. ECF No. 26 ("Southwood's Mot."); Def. U.S. Dep't. of Edu.'s Mem. of Law in Supp. of its Mot. for Summ. J., Adv. Pro. ECF No. 27. Plaintiff filed a memorandum of law in opposition to both motions. Mem.

[1] Citations to Adv. Pro. ECF No. [_] are references to documents filed on the docket of the above-captioned adversary proceeding.

of Law in Supp. of Pl.'s Obj. to Def.'s Mot. for Summ. J., Adv. Pro. ECF No. 28 ("Pl.'s Obj."). Both defendants replied. Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J., Adv. Pro. ECF No. 30; Def. U.S. Dep't of Edu.'s Reply Mem. of Law in Further Supp. of its Mot. for Summ. J., Adv. Pro. ECF No. 31.

The Court heard oral argument on the two motions on May 19, 2026. The Court conferenced the matter on June 18, 2026 to advise Plaintiff that she had not filed counter-proposed statements of facts. To date, Plaintiff has not filed counter-proposed statements of facts or requested time to do so.

**FINDINGS OF FACT**

Plaintiff is in her mid-twenties and resides in Brooklyn, New York. Southwood's Undisp. Facts at 3 ¶ 1[2]; Def. Dep't. of Edu.'s State. of Undisp. Facts, Adv. Pro. ECF No. 27-2 ("DOE's Undisp. Facts"), at 2 ¶¶ 1, 9. Plaintiff earned a high school diploma from Mater Academy Charter School in 2018 and a Bachelor of Arts in Art History and Media and Arts Management from Marymount Manhattan College ("Marymount") in 2024. Southwood's Undisp. Facts at 6 ¶ 22; DOE's Undisp. Facts at 2 ¶¶ 2–4. Marymount was included on the DOE's Federal School List as a Title IV educational institution for the 2020-2021 and 2022-2023 academic years. Southwood's Undisp. Facts at 5 ¶ 15. While a student at Marymount, Plaintiff took courses in finance, business, strategic management, marketing, economics, not-for-profit fundraising, marketing, and art history, among others. DOE's Undisp. Facts at 2 ¶ 5. Plaintiff does not suffer from any long-term injuries, disabilities or other physical or mental conditions. Southwood's Undisp. Facts at 7 ¶ 29; DOE's Undisp. Facts at 5 ¶ 25.

[2] Citations to Southwood's Undisp. Fact are references to Southwood's Separate Statement of Material Facts to which Defendant Contends There is No Genuine Issue to Be Tried, which is found at pages 3-7 of Southwood's brief in support of its motion for summary judgment. Adv. Pro. ECF No. 26.

In 2020, Plaintiff obtained a private student loan from Sallie Mae Bank in the amount of $20,000 for the 2020-2021 academic year ("Southwood Loan 1"). Southwood's Undisp. Facts at 3–4 ¶ 5. In 2022, Plaintiff obtained a private student loan from Sallie Mae Bank in the amount of $8,000 for the 2022-2023 academic year ("Southwood Loan 2" and together with Southwood Loan 1, the "Southwood Loans"). *Id.* at 3 ¶ 3. Plaintiff also obtained loans from the DOE (the "DOE Loans") to finance her education at Marymount. DOE's Undisp. Facts at 2 ¶ 8. The cost of attendance at Marymount totaled $60,028 for the 2020-2021 academic year and $73,144 for the 2022-2023 academic year. Southwood's Undisp. Facts at 4 ¶ 13, 5 ¶ 14. Plaintiff received scholarships and grants totaling $9,845 for the 2020-2021 academic year and $9,895 for the 2022-2023 academic year. *Id.* at 6 ¶¶ 20–21.

Prior to approving the Southwood Loans, Sallie Mae Bank required Plaintiff to submit self-certification forms, identifying Marymount's cost of attendance and the financial assistance Plaintiff would receive for the relevant academic years. Southwood's Undisp. Facts at 3 ¶¶ 3, 5. In the Southwood Loan 1 agreement, Plaintiff agreed the Southwood Loan 1 would be used solely to pay qualified higher educational expenses at Marymount. Southwood's Undisp. Facts at 5 ¶ 19, Ex. D. Similarly, in the Southwood Loan 2 agreement, Plaintiff agreed the Southwood Loan 2 would be used for educational expenses only. *Id.* at 5–6 ¶ 19, Ex. B. The Southwood Loans were transferred to Southwood. Southwood's Undisp. Facts at 4 ¶ 8.

In the fall of 2019, while a student at Marymount, Plaintiff interned at Fergus McCaffery gallery in Manhattan, New York. DOE's Undisp. Facts at 3 ¶ 10. Also, while a student at Marymount, Plaintiff worked as a nanny, earning approximately $20 per hour. *Id.* at 3 ¶ 11. In April 2020, Plaintiff was hired as a retail associate at Lismar Cards ("Lismar"), a store in Brooklyn, New York. *Id.* at 3 ¶ 12. From April 2020 until at least June 2025, Plaintiff worked approximately

32 to 34 hours per week at Lismar. *Id.* at 3 ¶ 13. Between June 2022 and July 2023, Plaintiff worked as a full-time studio assistant for an artist. *Id.* at 3 ¶ 14. Between the fall of 2023 and January 2024, Plaintiff worked as a gallery assistant at the Museum of Architecture. *Id*. at 4 ¶ 19. Between September 2024 and March 2025, Plaintiff worked as a development assistant at an international studio and curatorial program in Brooklyn, New York. *Id.* at 4 ¶ 20.

Between January 2023 and May 2025, while employed at Lismar, Plaintiff applied for approximately one hundred and fifteen (115) jobs in Brooklyn and Manhattan, New York. DOE's Undisp. Facts at 3 ¶ 15. Plaintiff searched for jobs on the New York Foundation for the Arts website, employer websites, and BambooHR, a job recruiting platform. *Id.* at 4 ¶ 23. Plaintiff also networked with friends, professors, and professionals in the arts industry. *Id.* at 4 ¶ 24. In 2023 and 2024, Plaintiff only applied for jobs at art galleries and auction houses. *Id.* at 3 ¶ 17. In 2025, Plaintiff extended her search to jobs in the performing arts. *Id.* at 4 ¶ 21. From January 2025 to April 2025, Plaintiff applied to approximately twenty jobs in the performing arts. *Id.* at 4 ¶ 21. Between January 2023 and May 2025, Plaintiff received interviews with several prospective employers but received no job offers. *Id.* at 3–4 ¶ 18.

Plaintiff hopes to work in development at a visual arts-centered nonprofit organization, earning an average annual salary between $40,000 and $60,000. Southwood's Undisp. Facts at 6–7 ¶ 25.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), made applicable by Bankruptcy Rule 7056, summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed

"material" if it "might affect the outcome of the suit under the governing law[.] . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

When considering a motion for summary judgment, "the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists." *Bethpage Fed. Credit Union v. Freidman (In re Kabbalah Taxi Inc.)*, Adv. Pro. No. 18-1016, 2018 WL 3569314, at *2 (Bankr. E.D.N.Y. July 20, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L.Ed.2d 265, 278 (1986)). In reviewing the facts and evidence presented, the court "must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990)).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323–25, 106 S. Ct. at 2553–54, 91 L. E. 2d at 274–75. Once the moving party meets its initial burden, the burden falls on the non-moving party to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 89 L. Ed. 2d 538, 552 (1986) (quoting former Fed. R. Civ. P. 56(e)). A non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). To meet its burden, the non-moving party must provide more than a "scintilla of evidence" that there is a genuine

dispute of material fact, *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, 91 L. Ed. 2d at 214, or "more than a metaphysical doubt regarding a material fact[.]" *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (internal citations omitted). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511, 91 L. Ed. 2d at 212. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (internal citations omitted).

Local Rule 7056-1 states:

> The opposition to a motion for summary judgment shall include a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted by the opposing party unless controverted by the statement required to be served by the opposing party.

E.D.N.Y LBR 7056-1.

Under the Local Rule, the statement of undisputed facts submitted by the party moving for summary judgment is deemed admitted if the party opposing the motion fails to file a counter-proposed statement of facts. *See Ethelberth v. Omogun (In re Omogun)*, Ch. 7 Case No. 16-75566, Adv. Proc. No. 17-08023, 2022 WL 2517160, at *1 (Bankr. E.D.N.Y. July 6, 2022) (Scarcella, Bankr. J.) ("By failing to properly controvert plaintiff's Statement of Material Facts, the material facts set forth in plaintiff's statement are 'deemed to be admitted' for purposes of the summary judgment motion to the extent they are supported by the record."); *Thaler v. Capital One, N.A. (In re Holub Enters., Inc.)*, Adv. Proc. No. 16-8026, 2017 WL 3704819, at *3 (Bankr. E.D.N.Y. Aug. 23, 2017) (Trust, Bankr. J.) ("Defendants did not respond to the Trustee's Local Rule 7056–1 Statement; as a result, the Court deems them uncontroverted statements of fact.").

## DISCUSSION

### I. Whether the Southwood Loans are Educational Loans Under Section 523(a)(8)

Except in cases of undue hardship, Bankruptcy Code Section 523(a)(8) provides that the following types of education loans are protected from discharge:

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).[3] The burden of proof is on the creditor to prove by a preponderance of the evidence that the claim is a nondischargeable student loan. *Tingling v. Educ. Credit Mgmt. Corp. (In re Tingling)*, 990 F.3d 304, 308 (2d Cir. 2021).

Section 221(d)(1) of the Internal Revenue Code of 1986 (the "IRC") defines "qualified educational loan" as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." 26 U.S.C. § 221(d)(1). The IRC defines "taxpayer" as "any person subject to any internal revenue tax." 26 U.S.C. § 7701(a)(14). IRC Section 221(d)(2) defines "qualified higher education expenses" as "the cost of attendance . . . at an eligible educational institution." 26 U.S.C § 221(d)(2). "Eligible educational institution" has the meaning ascribed by IRC Section 25A(f)(2), which section defines "eligible educational institution" as an institution:

> (A) which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of enactment of this section, and

[3] Plaintiff does not dispute that the DOE Loan is the type of loan described in Bankruptcy Code section 523(a)(8)(A)(i).

(B) which is eligible to participate in a program under title IV of such Act.

26 U.S.C. § 25A(f)(2).

Whether a loan is for a "qualified higher education expense" is determined by its "initial purpose . . . rather than [its] actual uses[.]" *Conti v. Arrowood Indemnity Co. (In re Conti)*, 982 F.3d 445, 449 (6th Cir. 2020). Courts consider the initial purpose of the loan because IRC Section 221(d) "focuses on whether the loan was incurred ... to pay qualified higher education expenses, rather than on its ultimate uses." *Id*. (internal quotation omitted). Also, "allowing debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the student loan system." *Id*.

The "cost of attendance" as used in IRC Section 221(d)(2) is not limited to tuition. Rather, the "cost of attendance" describes "'the amounts determined by the university' based on specified criteria including tuition and fees, room and board, 'books, materials, supplies, transportation, and miscellaneous personal expenses' [that] are 'determined by the university' and reported on the [Integrated Postsecondary Education Data System]." *Homaidan v. Navient Solns., LLC* (*In re Homaidan*), 646 B.R. 550, 589 (Bankr. E.D.N.Y. 2022) (quoting *In re Conti*, 982 F.3d at 448).

Southwood satisfied its burden of proving that the Southwood Loans are qualified education loans under IRC Section 221(d). First, it is undisputed that Plaintiff is a taxpayer. Southwood's Undisp. Facts at 5 ¶ 16. Second, it is undisputed that Marymount is an eligible educational institution because it was included on the Department of Education's Federal School List as a Title IV educational institution for the 2020-2021 and 2022-2023 academic years. *Id.* at 5 ¶ 15. Third, the Southwood Loans are for the cost of attendance as evidenced by Plaintiff's agreement that the loans would be used for educational expenses. Southwood's Undisp. Facts at 5 ¶ 19, Ex. B, D. Further evidence is Plaintiff's admission that proceeds from the Southwood

Loans were used "to cover the cost of attendance, room and board, textbooks, transportation to campus (MTA), lab fees, studio fees, [and] meal plans on campus." *Id.* at 5 ¶ 19. Moreover, the cost of attendance at Marymount, net of applicable grants and scholarships, was $50,183 for the 2020-2021 academic year and $63,249 for the 2022-2023 academic year. Southwood's Undisp. Facts at 4 ¶ 13, 5 ¶ 14, 6 ¶¶ 20, 21. In contrast, Plaintiff received $20,000 under Southwood Loan 1 for the 2020-2021 academic year and $8,000 under Southwood Loan 2 for the 2022-2023 academic year. *Id.* at 3–4 ¶¶ 3, 5.

Plaintiff does not claim the Southwood Loans exceeded the cost of attendance at Marymount or otherwise failed to satisfy Bankruptcy Code section 523(a)(8)(B)'s definition of a nondischargeable student loan. Instead, Plaintiff argues that the Southwood Loans are not qualified educational loans because they resemble "direct-to-consumer" products instead of traditional educational loans contemplated in Section 523(a)(8)(B). Pl.'s Obj. at 4. Specifically, Plaintiff asserts that the Southwood Loans cannot be considered qualified educational loans because they were "self-certified by Plaintiff; . . . disbursed without school verification of the cost of attendance;. . . [r]equired a cosigner; [and] . . . underwritten and approved using criteria undistinguishable from ordinary consumer credit." *Id.*

Plaintiff has not provided evidence that the Southwood Loans were disbursed without school verification of the cost of attendance or underwritten using consumer credit criteria. Further, Bankruptcy Code section 528(a)(8) does not say that loans that are unverified by the school as to the cost of attendance, underwritten as consumer loans, or cosigned are not nondischargeable student loans and Plaintiff has not cited authority supporting her contention that those types of loans would be dischargeable. To the Contrary, at least one court has held that self-

certified educational loans may be qualified educational loans. *See In re Crawford*, 653 B.R. 627, 637–38 (Bankr. S.D. Ohio 2023).

Based on the foregoing, Southwood has satisfied its burden of proof that the Southwood Loans are the types of loans that are nondischargeable student loans under 523(a)(8)(B).

## II. Whether Repayment of the Southwood and DOE Loans Will Impose an Undue Hardship

Plaintiff alleges that repayment of her student loan obligations will impose an undue hardship on her. To prevail on this claim, Plaintiff must show that (1) she cannot maintain, based on her current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans, (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and (3) she has made good faith efforts to repay the loans. *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).

Plaintiff carries the burden of proving by a preponderance of evidence that her student loan debt should be discharged due to "undue hardship." *Turturo v. Access Group, Inc.* (*In re Turturo*), 522 B.R. 419, 426 (Bankr. N.D.N.Y. 2014); *Benjumen v. AES/Charter Bank* (*In re Benjumen*), 408 B.R. 9, 15 (Bankr. E.D.N.Y. 2009) (citation omitted). If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding that the loans are non-dischargeable. *Williams v. N.Y. State Higher Educ. Serv. Corp.*, 296 B.R. 298, 302 (S.D.N.Y. 2003) (quoting *Pa. Higher Educ. Assistance Agency v. Faish* (*In re Faish*), 72 F.3d 298, 306 (3d Cir. 1995), *aff'd*, 84 F. App'x 158 (2d Cir. 2004)).

### i. Minimal Standard of Living

In determining whether a debtor has satisfied the first *Brunner* factor, courts focus on household income and the expenses necessary to meet a debtor's basic needs, such as food, shelter,

clothing, transportation and medical treatment, and assess whether a debtor has sought to maximize income while minimizing certain discretionary expenses. *See Pincus v. Graduate Loan Ctr.* (*In re Pincus*), 280 B.R. 303, 317–18 (Bankr. S.D.N.Y. 2002). A debtor need not "live a life of abject poverty, but it does require 'more than a showing of tight finances.'" *Johnson v. Sallie Mae Inc.* (*In re Johnson*), 550 B.R. 874, 879 (Bankr. M.D. Ala. 2016) (quoting *McLaney v. Ky. Higher Educ. Assistance Auth. (In re McLaney)*, 375 B.R. 666, 674 (M.D. Ala. 2007)); *see In re Faish*, 72 F.3d at 306. A debtor must demonstrate financial circumstances that go beyond the "garden-variety financial hardship" that most debtors experience. *Wolph v. U.S. Dept. of Educ.* (*In re Wolph*), 479 B.R. 725, 729 (Bankr. N.D. Ohio 2012) (citation omitted); *see also Pincus*, 280 B.R. at 317 (finding the minimal standard of living to require more than significant forbearance in personal and financial matters or a restricted budget).

Plaintiff argues, and Southwood does not dispute, that Plaintiff has minimized her monthly expenses. See Pl.'s Obj. at 13. Plaintiff, however, has failed to demonstrate that she has sought to maximize her income. *See In re Pincus*, 280 B.R. at 318 ("A debtor must also establish that he has made efforts to maximize income and minimize expenses.") (citations omitted). In that regard, Plaintiff has been unable to find any work in her desired field; however, Plaintiff provides no evidence that she is unable to find higher paying work outside of her chosen professions. Further, although Plaintiff argues in her memorandum of law that her annual income of $23,000 is insufficient to cover her necessities, she has not demonstrated financial circumstances that go beyond the "garden-variety financial hardship" that most debtors experience.

**ii. Additional Circumstances**

In determining whether a debtor has satisfied the second *Brunner* factor, a debtor must establish that her current inability to pay her student loan debt is likely to persist for a significant

portion of the repayment period. *Johnson*, 550 B.R. at 880 (citation omitted); *Mosley v. General Revenue Corp.* (*In re Mosley*), 330 B.R. 832, 842 (Bankr. N.D. Ga. 2005), *aff'd*, 494 F.3d 1320 (11th Cir. 2007) (citation omitted). In determining whether a debtor has met this second factor, courts consider the debtor's job skills, age, health, the number of working years remaining, and whether the debtor has maximized her income potential. *See Turturo*, 522 B.R. at 427; *Traversa v. Educ. Credit Mgmt. Corp.* (*In re Traversa*), 444 F. App'x 472, 474–75 (2d Cir. 2011). The debtor must demonstrate that additional circumstances do not merely present inability to pay student loan debt but point to a "certainty of hopelessness." *Johnson*, 550 B.R. at 880; *Mosley*, 330 B.R. at 842.

As a threshold matter, the court must determine the relevant repayment period. The last contractual payment due on the Southwood Loans is in December of 2038.[4] Southwood's Undisp. Facts at 7 ¶ 30, Ex. B. Accordingly, the relevant repayment period is at least twelve years.

Plaintiff is in her mid-twenties and does not suffer from any injuries, disabilities or other physical, emotional or mental conditions that may affect her ability to work or repay her loans. *See* Southwood's Undisp. Facts at 7 ¶ 29. Plaintiff took a wide range of business courses at Marymount, and worked for years nannying and in retail. DOE's Undisp. Facts at 2 ¶ 5; 3 ¶¶ 11–12. Since graduating from Marymount, Plaintiff has successfully obtained multiple jobs in the art world, indicating her employability in the art industry. Additionally, Plaintiff has many working years ahead of her and possesses work experience and education that make her employable in other fields.

[4] Neither the Department of Education nor the Plaintiff provides when the last contractual payment is due on Plaintiff's Department of Education Loans.

Based on the foregoing, the Court finds that Plaintiff has not satisfied her burden of proving that her current inability to pay her student loan debt is likely to persist for a significant portion of the twelve-year repayment period.

**iii. Good Faith**

To satisfy the third *Brunne*r factor, Plaintiff must show she has made good faith efforts to repay her student loan debt. *Jean-Baptiste v. Educ. Credit Mgmt. Corp* (*In re Jean-Baptiste)*, 584 B.R. 574, 589 (Bankr. E.D.N.Y. 2018). In determining good faith, Courts consider among other things "[the] [p]laintiff's actions to maximize his income and minimize his expenses, his loan repayment history, and whether he has negotiated or enrolled in an alternative repayment plan." *In re Benjumen*, 408 B.R. at 21 (internal citations omitted).

Plaintiff has not introduced evidence as to her loan repayment history or whether she has negotiated or enrolled in an alternative repayment plan. Accordingly, Plaintiff has failed to satisfy the third factor of the *Brunner* test.

**iv. Brunner is Binding**

Plaintiff asserts that the *Brunner* test is obsolete, and the Court should abandon the *Brunner* test, because Plaintiff and other debtors today face challenges that debtors did not face when *Brunner* was decided in 1987. Pl.'s Obj. at 13. However, *Brunner* is binding precedent in the Second Circuit and this Court is obligated to apply *Brunner* in this circumstance where Plaintiff, as a chapter 7 bankruptcy debtor, seeks discharge of her student loans.

## CONCLUSION

For the reasons set forth above, Southwood's and the DOE's motions for summary judgment are granted and the Plaintiff's complaint is dismissed. Southwood and DOE are directed to submit judgments in conformity with this memorandum.

Dated: October 7, 2026
Brooklyn, New York

Jil Mazer-Marino
Chief United States Bankruptcy Judge